**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                              No. CR 12-0128 JB

RAMON GONZALEZ, JR.,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on Defendant Ramon Gonzalez, Jr.'s Objections to Magistrate Judge's Detention Order and Motion for De Novo Review of Same, filed Nov. 20, 2012 (Doc. 276)("Objections"). The Court held a hearing on Gonzalez, Jr.'s Objections on January 2, 2013. The primary issues are: (i) whether the Honorable W. Daniel Schneider, United States Magistrate Judge, correctly applied the framework that 18 U.S.C. § 3148 provides for revocation of pretrial supervised release where, because Gonzalez, Jr. was arrested for a petty misdemeanor, violating the "zero tolerance" condition of his release, Judge Schneider revoked Gonzalez, Jr.'s supervised release; (ii) whether Gonzalez, Jr.is unlikely to abide by any condition or combination of conditions for release in light of his having complied with the conditions of release for over six months already and self-reported his arrest; (iii) whether the 18 U.S.C. § 3142(g) factors for pretrial detention weigh against detention; and (iv) whether requiring at least thirteen months pretrial detention for violation of a zero tolerance condition would be punitive and contrary to due process. The Court will sustain the Defendant's Objections to Judge Schneider's findings that Rodriguez should be detained pre-trial. Judge Schneider failed to appropriately apply 18 U.S.C. § 3148's framework when he revoked Gonzalez, Jr.'s pretrial release for violation

of the "zero tolerance" condition of his release.   Because of Gonzalez, Jr.'s history of compliance with supervised pretrial release and his circumstances, and his self-surrender to United States Pretrial Services, he is not unlikely to abide by any condition or combination of conditions for release.   In light of Plaintiff United States' evidence against Gonzalez, Jr. and of Gonzalez Jr.'s history, and because the Court concludes that it can impose conditions of release to safeguard against the United States' concerns about releasing Gonzalez, Jr., 18 U.S.C. § 3142(g)'s factors weigh in favor of releasing Gonzalez, Jr. pretrial.   Gonzalez, Jr.'s detention under the circumstances would be punitive and likely violative of due process, given that the Court can reduce to acceptable levels Gonzalez, Jr.'s danger to others and to the community.   The Court concludes that it should release Gonzalez, Jr. to home imprisonment with electronic monitoring.

## FACTUAL BACKGROUND

Gonzalez, Jr. was indicted for his alleged involvement in the Varela Drug Trafficking Organization ("Varela DTO"), led by Gonzalez, Jr.'s co-Defendant, Homero Varela, who is believed to be a member or associate of the Sinaloa Drug Cartel out of the Republic of Mexico. The Varela DTO is believed to be supplied significant amounts of drugs, including cocaine, marijuana, methamphetamine, and possibly heroin, by the Sinaloa Cartel for re-distribution in and around the Albuquerque, New Mexico metropolitan area.   Gonzalez Jr.'s father, Ramon Gonzalez, Sr., is also a co-Defendant in this case, and was the Defendant caught trafficking drugs in the "El Paso Drug Seizure."   On November 10, 2011, Gonzalez, Sr. was stopped by the El Paso County, Texas, Sheriff's Department.   During a consensual search of his vehicle, the Sheriff's Department found and seized two hundred and forty-four kilograms of marijuana and twenty-six kilograms of cocaine from Gonzalez, Sr.'s horse trailer that he was pulling behind his vehicle.

-2-

Gonzalez, Jr. has significant and strong ties to the community.   As a United States citizen, he has lived in Albuquerque, New Mexico, since birth.   Gonzalez, Jr. has resided in his current home, owned by his father, Gonzalez Sr., which he shares with his girlfriend of nine years and their three-month-old baby, for approximately ten years.   In addition, Gonzalez, Jr. has several aunts and uncles in the Albuquerque area, and his mother resides in Torrance County, New Mexico at another family ranch.

Gonzalez, Jr. operates his horse, farming, and racing business from his home.   There is no evidence that Gonzalez, Jr. has a criminal history; Gonzalez, Jr. has no history of violence, and no discernable history of drug use or abuse.   There is no evidence that he has engaged in violent or dangerous behavior in the past.

## PROCEDURAL BACKGROUND

On January 25, 2012, Gonzalez, Jr. was charged as part of a twenty-nine-count indictment charging fifteen men with offenses, including conspiracy, drug trafficking, money laundering, structuring financial transactions, and telephone counts.   See Indictment (Doc. 2).   Gonzalez, Jr. is charged with the following Counts: (i) Count 1 – conspiracy to distribute controlled substances in violation of 21 U.S.C. § 846; (ii) Counts 7-13 – causing and attempting to cause a domestic financial institution to fail to file a report required under 31 U.S.C. § 5313(a) and § 5325; and (iii) Count 17 – unlawfully, knowingly, and intentionally using a telephone in facilitating the conspiracy.   See Indictment at 1-2, 4-6, 8-9.

In February, 2012, Gonzalez, Jr. successfully overcame the presumption that the nature and characteristics of the underlying offenses favor detention.[1]   On February 3, 2012, the

_____

[1] Gonzalez, Jr. was initially subject to the rebuttable presumption that no conditional or

-3-

Honorable Robert Scott, United Magistrate Judge, issued and entered an Order Setting Conditions

of Release for Gonzalez.   See Doc. 103.   His conditions of release provided for "zero tolerance."

Provision (8)(u) of his conditions of release reads: "ZERO TOLERANCE: Report any contact

with law enforcement to supervising officer within 24 hours."   Order Setting Conditions of

Release at 2.   Throughout his pre-trial release, Gonzalez, Jr. has consistently appeared for the

Court and complied with all other conditions of release.   Gonzalez, Jr. was so compliant that,

several months ago, the United States Pretrial Services contacted his counsel to recommend that

Gonzalez, Jr. be removed from electronic monitoring.

On July 10, 2012, Paul J. Kennedy, Gonzalez, Jr.'s attorney, filed an Unopposed Motion to

Modify Conditions of Release to remove electronic monitoring.   See Doc. 220.   On August 14,

2012, the Honorable   Lorenzo Garcia, United States Magistrate, granted the Unopposed Motion

to Modify Conditions of Release, and modified Gonzalez' conditions to provide that he no longer

be subject to radio frequency or other electronic monitoring.   See Doc. 243.   Arne Leonard

substituted as counsel for Mr. Kennedy when the Governor of the State of New Mexico appointed

---

combination of conditions would reasonably assure his appearance at trial or eliminate his danger
of risk to others and to the community -- i.e., that he should be detained pretrial -- pursuant to 18
U.S.C. § 3142(e)(3), because of his alleged participation in the the drug trafficking conspiracy for
which he was indicted under 21 U.S.C. § 846.   Section 3142(e) of Title 18 of the United States
Code imposes upon a person the rebuttal presumption "that no condition or combination of
conditions will reasonably assure the appearance of the person as required and the safety of the
community" if there is probable cause to believe that the person committed "an offense for which
a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances
Act . . . ."   18 U.S.C. § 3142(e)(3)(A).   See United States v. Villapudua-Quintero, 308 F. App'x
272, 273 (10th Cir. 2009)(unpublished)(per curiam)(recognizing that 18 U.S.C. § 3142(e)
establishes a rebuttable presumption favoring detention in the case of, among other defendants,
certain alleged drug offenders).   Because Gonzalez, Jr. is indicted for having allegedly conspired
to distribute "50 grams and more of methamphetamine, 5 kilograms and more of cocaine, and 100
kilograms or more of marijuana . . . ," Indictment at 1-2, the penalty for which is incarceration for
ten years or more pursuant to 18 U.S.C. § 841(b)(1)(A), the § 3142 presumption of detention
applies to his case.

Mr. Kennedy to the Supreme Court of New Mexico in September 2012.

On October 24, 2012, Gonzalez, Jr. was arrested for and charged with a petty misdemeanor in Bernalillo County Metropolitan Court in Albuquerque.   See Petition for Action on Conditions of Pretrial Release (Doc. 262)("Petition for Action").   Gonzalez, Jr. is charged with soliciting sex over the internet with an under-cover Albuquerque Police Department Vice Officer, whom he believed to be a prostitute.   See Response to Defendant's Motion for Release at 1, filed Dec. 12, 2012 (Doc. 294)("Response").   The United States represents that, according to the police report, Gonzalez, Jr. was arrested while inside the hotel room with the Vice Officer, after agreeing to pay $80.00 for sex with the prostitute.   See Response at 1-2.   A person guilty under N.M.S.A. 1978, § 30-9-3 is guilty of a petty misdemeanor, unless such crime is a second or subsequent conviction, in which case such person is guilty of a misdemeanor.   See N.M.S.A. 1978, § 30-9-3(B).   In accordance with his conditions of release regarding contact with law enforcement, Gonzalez, Jr. contacted the Pretrial Services and, subsequently, voluntarily self-surrendered to authorities. Once again, in compliance with his conditions of release, he reported to Pretrial Services in response to the petty misdemeanor charges and self-surrendered as directed.   Thus, until he was charged in October, 2012, he complied with all conditions of release for nearly nine months, six months of which he was subject to electronic monitoring.

On October 29, 2012, United States Probation Officer ("USPO") Sharla M. Koch filed a Petition stating that Gonzalez, Jr. had been arrested and that he had violated provision (8)(u) of his conditions of release.   See Petition for Action on Conditions of Pretrial Release at 1 (Doc. 262).

The Court has designated this case complex.   See Second Stipulated Scheduling Order, filed November 2, 2012 (Doc. 265).   On November 2, 2012, the Court entered a Second

-5-

Stipulated Scheduling Order, extending case-management deadlines into 2014.   See Second Stipulated Scheduling Order ¶ 14, at 5.   The trial will not be scheduled until sometime after February, 2014.

On November 6, 2012, at the revocation and detention hearing before the Honorable Daniel Schneider, United States Magistrate Judge, Gonzalez' counsel stipulated that there was probable cause to believe that Gonzalez, Jr. committed a petty misdemeanor, but argued that pretrial detention was not appropriate at this juncture, because 18 U.S.C. § 3148 still requires the Court to consider the 18 U.S.C. § 3142(g) factors, and that those factors weigh in favor of pretrial release on conditions.   Judge Schneider did not follow and apply the statutory framework in 18 U.S.C. § 3148, and instead adopted the United States' reasoning and rationale that detention is appropriate: that Judge Schneider should detain Gonzalez, Jr. because he violated the "zero tolerance" provision in his conditions of release.   Judge Schneider stated:

> [T]he presumption applied originally and he overcame the presumption in front of Judge Scott, but I note that Judge Scott then put on a "zero tolerance" provision. Given the prior existence of the presumption and the fact that Judge Scott made it "zero tolerance," I don't feel I have any choice but to remand him to custody . . . .

Liberty Court Player at 9:41:25-41:52 (taken Nov. 6, 2012)(Court).   Judge Schneider did not take into consideration that, in light of the Second Stipulated Scheduling Order, Gonzalez, Jr.'s pretrial detention will extend well over a year.   Judge Schneider orally revoked Gonzalez, Jr.'s conditions of release, and subsequently that same day filed an Order revoking Rodriguez' conditions of release and requiring detention.   See Order at 1, filed Nov. 6, 2012 (Doc. 272).   Judge Schneider ordered Gonzalez, Jr. to the United States Marshal Service's custody.   See Order at 1.

That same day, then-Justice Kennedy was not reelected to the Supreme Court of New Mexico.

The United States, through its counsel of record, Assistant United States Attorney Reeve Swainston, opposes Gonzalez, Jr.'s request for pretrial release from detention.

Pursuant to 18 U.S.C. § 3145 and rule 59 of the Federal Rules of Criminal Procedure, Gonzalez, Jr. objects to, and moves the Court for de novo review of, Judge Schneider's Order of revocation of conditions of release and detention.  See Objections at 1.  Gonzalez, Jr. requests that the Court revoke or amend Judge Schneider's Order, and find that there are conditions of release that will ensure that he will not flee, or pose a danger to the safety of any other person or the community, and that he will abide such conditions.  See Objections at 1.  Gonzalez, Jr. requests that, based on such findings, the Court release him pre-trial on conditions including, but not limited to, electronic monitoring.  See Objections at 1.

In his Objections, filed November 20, 2012, Mr. Leonard requests that the Court set a hearing on this appeal after the first week of December 2012, when Mr. Kennedy would be available for the hearing.  See Objections at 1 n.1.  It was anticipated that Mr. Kennedy would return to practice and re-enter his appearance in this case upon the expiration of his term of office after the first week of December, 2012.  Mr. Kennedy re-entered his appearance in this case on December 12, 2012.  See Entry of Appearance and Notice of Firm Name Change (Doc. 293).

The United States filed its Response to Defendant's Motion for Release on December 12, 2012.  See Response.  The United States urges the Court to focus, not on the term "zero tolerance," but rather on its import: that Judge Scott "was concerned that this defendant may not succeed on conditions of release, so strict conditions were [] required in order for the Court to feel comfortable with any conditions of release of this defendant."  Response at 3.  The United States asserts that "this Court should not tolerate the defendant's audacious violation of New Mexico law.

-7-

Indeed, notwithstanding the defendant's prospective acquiescence to restrictive conditions . . . , he remains a danger to any other person and the community, and a risk of flight, and should therefore remain in custody pending the outcome of this [] proceeding." Response at 3.

At the Court's hearing on the Objections, Gonzalez, Jr. pointed out that, in revoking Gonzalez, Jr.'s  conditions of release, Judge Schneider stated that Gonzalez, Jr.'s breach of the "zero tolerance" policy was "probable cause to support the arrest[;] nothing more needs to be said or done." Transcript of Hearing at 2:15-23 (Kennedy)(taken Jan. 2, 2012)("Tr.").[2]  Gonzalez, Jr. contended that Judge Schneider's analysis violated 18 U.S.C. §§ 3142 and 3148, because he did not go through the factors outlined, but rather "peremptorily, and without due process, detained Mr. Gonzalez, Jr. because of his arrest." Tr. at 2:24-3:3 (Kennedy).  Gonzalez, Jr. asserted that there are a combination of conditions of release that will assure that he does not pose a danger to the safety of any person or to the community, and that guarantee that he will not be a flight risk. See Tr. at 3:12-19.  In response to the Court's inquiry what conditions of release will assure the Court that Gonzalez, Jr. will not, once again, commit a crime while on pretrial release, Gonzalez, Jr. stated that, while he still requests that the Court release him to his mother's ranch[3] so that he

_____

[2]  The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcripts may contain slightly different page and/or line numbers.

[3]  Gonzalez, Jr.'s family has two ranches on which they house and train their horses -- one in Bernalillo County, New Mexico, and one in Torrence County, New Mexico.  Judge Scott precluded Gonzalez, Jr. from living at and visiting the Torrence County ranch, and Gonzalez, Jr. has resided at the family ranch in Bernalillo County.  Judge Scott did so because Andres Gonzalez, a horse trainer whom the Gonzalez family employed and a co-Defendant in this case, had been residing and working at the Torrence County ranch under home detention pursuant to his pretrial conditions of release.  On November 21, 2012, however, the United States Probation Department performed a random search of the home in which A. Gonzalez was staying, and found in his possession a rifle and a safe deposit box containing approximately $4,900.00 cash. See Petition for Action on Conditions of Pretrial Release ¶¶ at 1, filed Nov. 26, 2012 (Doc. 277).

can continue to perform his work with the horses on the ranch, he could give up his computer and internet connection while on release.   See Tr. at 7:12-8:23 (Kennedy, Court).   The Court asked Gonzalez, Jr. how his arrest affects the Court's analysis under § 3142, because Judge Scott, in releasing him pre-trial the first time, seemed to rely heavily on Gonzalez, Jr.'s  lack of any criminal history, which is not the case any longer.   See Tr. at 8:9-10:7 (Court, Kennedy). Gonzalez, Jr. responded that, because his arrest does not cause the additional burden within § 3148 to be imposed upon him, he still meets his required burden of production to establish that there are conditions for his release.   See Tr. at 10:8-16 (Kennedy, Court).

The Court inquired what role the United States believes Gonzalez, Jr. played in the drug trafficking conspiracy for which he was indicted.   See Tr. at 11:15-12:6 (Court).   The United States responded that there is evidence connecting him with the conspiracy to distribute marijuana and cocaine, as well as evidence that he played a role in "the El Paso seizure," which involved the United States' seizure of twenty-six kilograms of cocaine and several hundred pounds of marijuana.   See Tr. at 12:23-13:10 (Swainston).   The United States asserted that "at the end of the day this conduct not only violates [Gonzalez, Jr.'s ] conditions of release, but it also . . . demonstrates for the Court that Mr. Gonzalez, Jr. could not care less about the supervision of this Court, of Judge Scott, who unambiguously told him that there would be a zero tolerance supervision."   Tr. at 17:16-22 (Swainston).   In response to the Court's inquiry what particularly the United States is worried about -- whether about Gonzalez, Jr. fleeing the jurisdiction of the

---

Because A. Gonzalez' possession of the rifle violated a condition of his conditions of release, the United States Probation Office petitioned the United States District Court for the District of New Mexico to revoke A. Gonzalez' pretrial release.   See Petition for Action on Conditions of Pretrial Release at 1.     Judge Schneider revoked A. Gonzalez' conditions of release and remanded him to Pretrial Services' custody, see Order at 1 (Doc. 286), where A. Gonzalez remains at this time.

Court, or that Gonzalez, Jr. would commit additional crimes -- the United States responded that "if the defendant was able to . . . get away with this offense and get back on conditions of release, what's to say that he wouldn't continue with that type of conduct or any other type of criminal conduct?"  Tr. at 19:23-20:24 (Swainston).   The United States conceded that it does not believe Gonzalez, Jr. presents a flight risk.   <u>See</u> Tr. at 21:4-15 (Swainston).   In response to the United States' contention that it was greatly concerned that Gonzalez, Jr. committed a crime in violation of the conditions of release, the Court asked whether it would make a difference, and would have made a difference under the "zero tolerance" provision, if Gonzalez, Jr. had been cited for a traffic violation.   <u>See</u> Tr. at 22:2-10 (Swainston, Court).   The United States responded that, although it would have still been a violation of his pretrial release conditions, because visiting a prostitute is a crime that reflects more substantially upon Gonzalez, Jr.'s character and the trust relationship he was in with the Court, a traffic violation would be distinguishable from Gonzalez, Jr.'s arrest for patronizing a prostitute.   <u>See</u> Tr. at 22:21-23:10 (Swainston).

The Court asked, if the Court finds that he should be released, what conditions the United States would ask the Court to impose as part of Gonzalez, Jr.'s pretrial release to try to reduce the risk of further criminal activity.   <u>See</u> Tr. at 23:18-22 (Court).   The United States asserted that, in addition to the necessity of Gonzalez, Jr. being placed in a halfway house, it "like[s] the idea of a curfew."  Tr. at 23:23-24:1 (Swainston). If Gonzalez, Jr.is not employed during his release, the United States asserted that there is no reason for him to be anywhere other than the halfway house when not meeting with his attorney.   <u>See</u> Tr. at 25:24-26:9 (Swainston).   Gonzalez, Jr. clarified that, while living in Albuquerque on pretrial release, he has been working by training seven race horses that are housed here in Albuquerque.   <u>See</u> Tr. at 27:14-24 (Kennedy).   Mr. Kennedy urged

the Court not to place Gonzalez, Jr. in a halfway house, because, among other things, it often has, in the past, presented a difficulty for him attempting to meet with his clients.   See Tr. at 28:10-18 (Kennedy).   Gonzalez, Jr. added that, because he has a girlfriend and a child at his residence in Albuquerque, the Court could adequately prevent further criminal activity by requiring electronic monitoring, and imposing a curfew, even a twenty-four hour curfew.   See Tr. at 28:19-29:1 (Kennedy).

## LAW REGARDING REVOCATION OF PRETRIAL SUPERVISED RELEASE

Section 3148 of Title 18 of the United States Code provides the process for revocation of a defendant's pretrial supervised release.   Section 3148 directs that, when a person is on pretrial release pursuant to 18 U.S.C. § 3142, and violates a condition of the pretrial release:

> **(b) Revocation of release.** --The attorney for the Government may initiate a proceeding for revocation of an order of release by filing a motion with the district court. A judicial officer may issue a warrant for the arrest of a person charged with violating a condition of release, and the person shall be brought before a judicial officer in the district in which such person's arrest was ordered for a proceeding in accordance with this section. To the extent practicable, a person charged with violating the condition of release that such person not commit a Federal, State, or local crime during the period of release, shall be brought before the judicial officer who ordered the release and whose order is alleged to have been violated. The judicial officer shall enter an order of revocation and detention if, after a hearing, the judicial officer --
>
> > **(1)** finds that there is --
> >
> > > **(A)** probable cause to believe that the person has committed a Federal, State, or local crime while on release; or
> > >
> > > **(B)** clear and convincing evidence that the person has violated any other condition of release; and
> >
> > **(2)** finds that --
> >
> > > **(A)** based on the factors set forth in section 3142(g) of this title, there is no condition or combination of conditions of release that

-11-

> will assure that the person will not flee or pose a danger to the safety of any other person or the community; or
>
> **(B)** the person is unlikely to abide by any condition or combination of conditions of release.
>
> If there is probable cause to believe that, while on release, the person committed a Federal, State, or local felony, a rebuttable presumption arises that no condition or combination of conditions will assure that the person will not pose a danger to the safety of any other person or the community. If the judicial officer finds that there are conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community, and that the person will abide by such conditions, the judicial officer shall treat the person in accordance with the provisions of section 3142 of this title and may amend the conditions of release accordingly.

18 U.S.C. § 3148.   "Probable cause under § 3148(b)(1)(A) requires only that the facts available to the judicial officer 'warrant a man of reasonable caution in the belief' that the defendant has committed a crime while on bail."   United States v. Cook, 880 F.2d 1158, 1160 (10th Cir. 1989) (quoting United States v. Gotti, 794 F.2d 773, 777 (2d Cir. 1986)).   Once the United States proves that there is probable cause to believe that that the defendant has committed a felony while on release, there is a rebuttable presumption that there is no condition or combination of conditions of release that will assure that the person will not flee, or not pose a danger to the safety of any other person or to the community.   See United States v. Cook, 880 F.2d at 1162.   Once the rebuttable presumption arises, the burden of production, but not the burden of persuasion, shifts to the defendant, and "the defendant must produce some evidence."   United States v. Cook, 880 F.2d at 1162 ("Once the presumption under that section comes into play, the burden of production, but not persuasion, shifts to the defendant.   The burden of production is not heavy, but in order to rebut the presumption, the defendant must produce some evidence.")(internal citations omitted).   If the defendant satisfies his or her burden, "the presumption does not disappear, but rather remains as a

factor for consideration in the ultimate release or detention determination." United States v. Cook, 880 F.2d at 1162.

## LAW REGARDING PRETRIAL DETENTION

Pursuant to the Bail Reform Act of 1984, 18 U.S.C. §§ 3141 to 3150, a defendant may be detained pending trial only after a hearing, held pursuant to 18 U.S.C. § 3142(f), and upon a finding "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). At such a hearing, the United States bears the burden of proving risk of flight by a preponderance of the evidence, and the burden of proving dangerousness by clear-and-convincing evidence. See 18 U.S.C. § 3142(f); United States v. Cisneros, 328 F.3d 610, 616 (10th Cir. 2003). "The rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). To determine whether pretrial detention is warranted, the judicial officer must consider the statutory factors set forth in 18 U.S.C. § 3142(g):

> (g) **Factors to be considered.** -- The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning --
>
>> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>>
>> (2) the weight of the evidence against the person;
>>
>> (3) the history and characteristics of the person, including --
>>
>>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the

-13-

community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B)     whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4)     the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3142(g).

When a defendant is charged with certain crimes, however, a presumption can arise that the defendant is a flight risk and a danger to the community.   See 18 U.S.C. § 3142(e)(3); United States v. Villapudua-Quintero, 308 F. App'x 272, 273 (10th Cir. 2009)(unpublished)[4] (per curiam)(recognizing that 18 U.S.C. § 3142(e) establishes a rebuttable presumption favoring detention in the case of, among other defendants, certain alleged drug offenders).  18 U.S.C.

_____

[4] United States v. Villapudua-Quintero, is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it. See 10th Cir. R. 32.1(A), 28 U.S.C. ("Unpublished opinions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit has stated: "In this circuit, unpublished orders are not binding precedent, . . . and . . . citation to unpublished opinions is not favored . . . . However, if an unpublished opinion . . .   has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision."   United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).   The Court finds that United States v. Villapudua-Quintero, and United States v. Hudak, 77 F. App'x 489 (10th Cir. 2003), and United States v. Cos, 198 F. App'x 727 (10th Cir. 2006), have persuasive value with respect to a material issue, and will assist the Court in its disposition of this memorandum opinion and order.

§ 3142(e)(3)(A) provides that a presumption of detention arises when "there is probable cause to believe that the person committed" certain drug offenses, specifically "an offense for which a maximum term of incarceration of ten years or more is prescribed in the Controlled Substances Act, the Controlled Substances Import and Export Act, or chapter 705 of title 46."  18 U.S.C. § 3142(e)(3)(A).  The United States Court of Appeals for the Tenth Circuit has explained that "[t]he grand jury indictment is sufficient to establish the finding of probable cause that defendant committed a federal drug offense with a maximum prison term of ten years or more."  United States v. Silva, 7 F.3d 1046, 1046 (10th Cir. 1993).  Accord United States v. Holguin, 971 F. Supp. 2d 1082, 1088 (D.N.M. 2011)(Browning, J.).

To determine whether there are conditions of release that will reasonably assure the appearance of the person as required, and to assure the safety of others and the community, a court must consider: (i) the nature and circumstances of the crime charged; (ii) the weight of the evidence against the defendant; (iii) the history and characteristics of the defendant, including family ties, employment, financial resources, community ties, drug or alcohol abuse history, and past conduct; and (iv) the nature and seriousness of the danger to the community or to an individual that would be posed by release.  See 18 U.S.C. § 3142(g).  Should the defendant carry his or her burden of production, the United States must then show by a preponderance of the evidence that the defendant presents a risk of flight, or by clear-and-convincing evidence that the defendant presents a danger to the community.  See United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001); United States v. Stricklin, 932 F.2d 1353, 1354-55 (10th Cir. 1991)("[T]he burden of persuasion regarding risk-of-flight and danger to the community always remains with the government."). Notably, however, even if the defendant meets her burden of production, "the

presumption remains a factor for consideration by the district court in determining whether to release or detain." United States v. Stricklin, 932 F.2d at 1355.   Accord United States v. Mercedes, 254 F.3d at 436.

It is a violation of due process to punish a pretrial detainee before a lawful conviction.   See United States v. Salerno, 481 U.S. 739, 747 n.4 (1987)(recognizing that there is a "point at which detention in a particular case might become excessively prolonged, and therefore punitive in relation to Congress' regulatory goal.").   The Tenth Circuit has held that detention of a criminal defendant pending trial violates due process when the detention is excessively prolonged and is not regulatory, but punitive.   See, e.g., Peoples v. CCA Det. Centers, 422 F.3d 1090, 1106 (10th Cir. 2005) opinion vacated in part on other grounds on reh'g en banc, 449 F.3d 1097 (10th Cir. 2006); United States v. Hudak, 77 F. App'x 489 (10th Cir. 2003)(unpublished)("Detention of a criminal defendant pending trial does not violate a defendant's due process rights under the Fifth Amendment, so long as the confinement does not amount to punishment."); United States v. Cos, 198 F. App'x 727, 732 (10th Cir. 2006)(unpublished)(stating that "due process may require a release from pretrial detention or, at a minimum, a fresh proceeding at which more is required of the government than is mandated by section 3142.")(quoting United States v. Accetturo, 783 F.2d 382, 388 (3d Cir. 1986)).   To determine whether a defendant's detention implicates due process, courts look to "1) the length of detention; 2) the extent of the prosecution's responsibility for the delay of trial; and 3) the strength of the evidence upon which the detention was based."   United States v. Cos, 198 F. App'x at 732.

## THE DISTRICT COURT'S STANDARD OF REVIEW WHEN REVIEWING A MAGISTRATE JUDGE'S DETENTION ORDER

Section 3145(a) of Title 18 provides that a "court having original jurisdiction over the

offense" may review a magistrate judge's detention order or release order.   18 U.S.C. §

3145(a)-(b).   "The standard of review for the district court's review of a magistrate judge's

detention or release order under § 3145(a) is de novo."   United States v. Cisneros, 328 F.3d 610,

616 n.1 (10th Cir. 2003).   "When the district court acts on a motion to revoke or amend a

magistrate's pretrial detention order, the district court acts de novo and must make an independent

determination of the proper pretrial detention or conditions for release."   United States v. Rueben,

974 F.2d 580, 585-86 (5th Cir. 1992).   See United States v. Maull, 773 F.2d 1479, 1481 (8th

Cir.1985)(stating that a district court's review of magistrate judge's order setting bond was de

novo).

## ANALYSIS

The Court has reviewed de novo Judge Schneider's revocation of Gonzalez, Jr.'s

supervised release, and finds that there are conditions of release that the Court can impose to assure

that Gonzalez, Jr. will not flee or pose a danger to the community.   Judge Schneider failed to

appropriately apply 18 U.S.C. § 3148's framework when he revoked Gonzalez, Jr.'s pretrial

release for violation of the "zero tolerance" condition of his release.   Because of Gonzalez, Jr.'s

history of compliance with supervised pretrial release and his circumstances, and his

self-surrender to Pretrial Services, he is not unlikely to abide by any condition or combination of

conditions for release pursuant to 18 U.S.C. § 3148(b)(2)(B).   In light of Plaintiff United States'

evidence against Gonzalez, Jr., and Gonzalez, Jr.'s history, and given that the Court can impose

conditions of release to safeguard the United States' concerns with releasing Gonzalez, U.S.C. §

3142(g)'s weigh in favor of releasing Gonzalez, Jr. pretrial.   Although pretrial detention of

Gonzalez, Jr. under the circumstances would not likely rise to the level of being punitive, because

the Court can reduce to acceptable levels Gonzales, Jr.'s danger to others and to the community,

the Court will release Gonzalez, Jr. pretrial.

## I.    JUDGE SCHNEIDER FAILED TO APPLY THE FRAMEWORK THAT 18 U.S.C. § 3148 PROVIDES.

Section 3148 of Title 18 of the United States Code provides the process for revocation of a

defendant's pretrial supervised release.   Section 3148 directs that, when a person is on pretrial

release pursuant to 18 U.S.C. § 3142, and violates a condition of the pretrial release:

> **(b) Revocation of release.**--The attorney for the Government may initiate a proceeding for revocation of an order of release by filing a motion with the district court. A judicial officer may issue a warrant for the arrest of a person charged with violating a condition of release, and the person shall be brought before a judicial officer in the district in which such person's arrest was ordered for a proceeding in accordance with this section. To the extent practicable, a person charged with violating the condition of release that such person not commit a Federal, State, or local crime during the period of release, shall be brought before the judicial officer who ordered the release and whose order is alleged to have been violated. The judicial officer shall enter an order of revocation and detention if, after a hearing, the judicial officer --
>
> > **(1)** finds that there is --
> >
> > > **(A)** probable cause to believe that the person has committed a Federal, State, or local crime while on release; or
> > >
> > > **(B)** clear and convincing evidence that the person has violated any other condition of release; and
> >
> > **(2)** finds that --
> >
> > > **(A)** based on the factors set forth in section 3142(g) of this title, there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; or
> > >
> > > **(B)** the person is unlikely to abide by any condition or combination of conditions of release.

If there is probable cause to believe that, while on release, the person committed a

Federal, State, or local <u>felony</u>, a rebuttable presumption arises that no condition or combination of conditions will assure that the person will not pose a danger to the safety of any other person or the community. If the judicial officer finds that there are conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community, and that the person will abide by such conditions, the judicial officer shall treat the person in accordance with the provisions of section 3142 of this title and may amend the conditions of release accordingly.

18 U.S.C. § 3148 (emphasis added).   "Probable cause under § 3148(b)(1)(A) requires only that the facts available to the judicial officer 'warrant a man of reasonable caution in the belief' that the defendant has committed a crime while on bail."   United States v. Cook, 880 F.2d at 1160 (quoting United States v. Gotti, 794 F.2d at 777).   The Tenth Circuit has recognized:

> [W]hen the government seeks an order of revocation on the ground that defendant has committed a felony while on release:
>
> > § 3142 does not come into play unless and until the judicial officer finds under § 3148(b)(2)(B) that the defendant has overcome the statutory rebuttable presumption and concludes []that there are conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community, and that the person will abide by such conditions . . . .   This is not such a case.

United States v. Cook, 880 F.2d at 1162 (quoting United States v. McKethan, 602 F. Supp. 719, 722 (D.D.C. 1985))(emphasis added).

The presumption of detention in 18 U.S.C. § 3148(b)(1) does not apply to Gonzalez, because he is charged in state court with only a petty misdemeanor and not with a felony.   The Tenth Circuit has noted that, in recommending Congress enact 18 U.S.C. §§ 3142 and 3148, the Senate Committee on the Judiciary expressly rejected the Department of Justice's recommendation that revocation of release be mandatory when the defendant has committed a serious crime on release, reasoning that "there may be cases in which a defendant may be able to demonstrate that, although there is probable cause to believe that he has committed a serious crime

-19-

while on release, the nature or circumstances of the crime are such that revocation of release is not appropriate." United States v. Cook, 800 F.2d at 1161 (quoting S. Rep. No. 98-225, at 35, reprinted in 1984 United States Code Congressional and Administrative News 3182, 3219).

A court cannot, consistent with Congress' directives, use the "zero tolerance" condition to bypass the statutory procedure for determining whether pretrial release is appropriate under these circumstances. While a zero tolerance condition may be useful in impressing upon a defendant the importance of compliance with all conditions of release, the legal reality is that the zero tolerance condition does not adequately reflect the § 3142(g) factors on which the Court must determine whether pretrial detention is necessary. Judge Schneider thus acted contrary to law in failing to consider the § 3142(g) factors when he revoked Gonzalez, Jr.'s conditions of release and ordered his detention.

## II.   THE COURT CAN REDUCE TO ACCEPTABLE LEVELS GONZALEZ, JR'S DANGER TO THE COMMUNITY, AND WILL THUS RELEASE GONZALEZ, JR. SUBJECT TO CERTAIN CONDITIONS.

Because Gonzalez, Jr. is charged in state court with commission of a misdemeanor, the presumption in 18 U.S.C. § 3148 in favor of detention does not apply. To permit pretrial release, therefore, the Court must find: (i) probable cause to believe that Gonzalez, Jr. has committed a Federal, State, or local crime while on release, or clear and convincing evidence that Gonzalez, Jr. violated a condition of his release; and (ii) based on § 3142(g)'s factors, there is no condition or combination of conditions of release that will assure that Gonzalez, Jr. will not flee or pose a danger to the safety of any other person or the community, or that Gonzalez Jr. is unlikely to abide by any condition or combination of conditions of release.

A.      A PREPONDERANCE OF THE EVIDENCE SHOWS THAT THERE IS PROBABLE CAUSE TO BELIEVE THAT GONZALEZ, JR. HAS COMMITTED A STATE CRIME WHILE ON RELEASE.

Under § 3148(a), to revoke pretrial detention, the Court must find either that there is probable cause to believe the defendant committed a crime, or that there is clear-and-convincing evidence that the defendant violated a condition of his or her release.   See 18 U.S.C. § 3148(b)(1). "Probable cause under § 3148(b)(1)(A) requires only that the facts available to the judicial officer 'warrant a man of reasonable caution in the belief' that the defendant has committed a crime while on bail."   United States v. Cook, 880 F.2d at 1160.

In United States v. Carr, No. 99-40086-01-RDR, 1999 WL 1285831 (D. Kan. Dec. 10, 1999), where the state police executed a search warrant on a woman's apartment with whom the defendant was known to "associate[e]" and found evidence suggesting that the defendant had stayed at the apartment, and found drugs in the apartment, the Honorable Richard D. Rogers, Senior United States District Court Judge for the District of Kansas, concluded that there was probable cause to believe the defendant had possessed drugs in violation of law, and revoked the defendant's release.   1999 WL 1285831, at *2-3.   Judge Rogers noted that the evidence the police found at the apartment indicating that the defendant was staying there included: (i) finding the defendant in the bathroom, while the woman who resided there was at work; (ii) letters from the defendant to the woman "indicating a boyfriend/girlfriend relationship;" (iii) a paper from the United States District Court for the District of Kansas stating his conditions of release; (iv) a pair of pants in the defendant's size; and (v) during the execution of the search warrant, the telephone rang and the caller asked for the defendant, and the call originated from the defendant's father's residence.   1999 WL 1285831, at *2.   Judge Rogers concluded that there was probable cause to

believe that the defendant possessed the drugs found in violation of law based on: (i) the same plastic bag in which the pants were found included "six small bags of marijuana packaged for sale," cocaine, and four larger bags of marijuana; (ii) there were other bags of marijuana in the house, alongside "rolling papers [and] postal scales;" and (iii) the defendant had prior drug convictions.   1999 WL 1285831, at *2-3.

The evidence against Gonzalez, Jr. is greater than that found sufficient for probable cause in United States v. Carr.   Although in United States v. Carr there was a considerable amount of circumstantial evidence connecting the defendant to the apartment and the drugs found therein, the officers did not find drugs on his person.   Judge Rogers also did not note that there was any witness testimony linking the defendant with the drugs or distribution of drugs during his supervised release.   Here, on the other hand, the evidence provided shows that, as in United States v. Carr, Gonzalez, Jr. was found in the same location as the alleged illegal activity, as he was arrested at a hotel with the Vice Officer whom he believed to a prostitute.   Where there was no evidence in United States v. Carr that others could provide witness testimony to connect the defendant to the drugs found in his house, the Vice Officer showed up at the hearing on the Objections, and was able and willing to provide testimony linking Gonzalez, Jr. to the state crime. Notably, the Vice Officer did not have to testify at Gonzalez, Jr.'s hearing in front of Judge Schneider on November 6, 2012, because Gonzalez, Jr. waived his right to an evidentiary hearing, conceded that there was probable cause he committed the state crime, and does not appear to be contesting the evidence against him now in his Objections.   The facts surrounding Gonzalez, Jr.'s arrest are thus sufficient to "'warrant a man of reasonable caution in the belief' that the defendant has committed a crime while on bail."   United States v. Cook, 880 F.2d at 1160.   The Court,

-22-

therefore, pursuant to 18 U.S.C. § 3148(b)(1)(A), finds probable cause to believe that Gonzalez, Jr.

committed a crime while on supervised pretrial release.

### B.       GONZALEZ, JR. IS LIKELY TO ABIDE BY CONDITIONS OF RELEASE.

Gonzalez, Jr.'s history and the circumstances of his pretrial detention until October 24,

2012, show, by a preponderance of the evidence, that given adequate monitoring, Gonzalez, Jr. is

not "unlikely to abide by any condition or combination of conditions of release."   18 U.S.C. §

3148(b)(2)(B).   The United States asserts that, given Gonzalez, Jr.'s arrest on October 24, 2012,

while on supervised pretrial release, there are no conditions or combination of conditions that will

assure that he will not be a danger to others or the community.   They concede, however, that, up

until Gonzalez, Jr.'s arrest, he had fully complied with all the conditions of his release, and

complied with the condition of his release to self-report within twenty-four hours of interacting

with police, by self-reporting to Pretrial Services the October 24, 2012, arrest.

Gonzalez, Jr. maintains that he has a clear interest in defending himself against the United

States' charges.   Gonzalez, Jr. faces pretrial detention for at least thirteen months if the Court

overrules Gonzalez, Jr.'s Objections to Judge Schneider's order.   Gonzalez, Jr. has pointed the

Court to the evidence that, from February 3, 2012, to October 24, 2012, he complied with all of the

Court's conditions of release.   Moreover, the Court notes that it was because of this compliance

that pretrial services affirmatively advised Gonzalez, Jr. that he should petition the Court to

terminate electronic monitoring, which Judge Lorenzo promptly granted. See Order at 1, filed

Aug. 14, 2012 (Doc. 243).   In the face of this history, and given Gonzalez, Jr.'s background and

characteristics, this recent violation, while concerning, does not support a finding that Gonzalez,

Jr. is unlikely to abide by conditions that the Court will impose.

There is no doubt that Gonzalez, Jr.'s recent prostitute charge shakes the Court's confidence in his willingness to toe the line.  On the other hand, the Court has not so lost confidence that the Court is prepared to say that the preponderance of the evidence shows that he is unlikely to abide by any conditions that the Court imposes.  While the Court is less confident in Gonzalez, Jr.'s willingness to comply with the conditions of release, the Court nonetheless finds, by a preponderance of the evidence that, given his compliance while on electronic monitoring and given the additional conditions of release that the Court will impose, he is not unlikely to abide by any conditions or combination of conditions of release.  A preponderance of the evidence thus shows that, under 18 U.S.C. § 3142(b)(2)(B), Gonzalez, Jr. is not unlikely to abide by any condition or combination of conditions of release.

**C.     BASED ON ANALYSIS OF 18 U.S.C. § 3142(g)'S FACTORS, THERE ARE CONDITIONS OF RELEASE THAT WILL ASSURE THAT GONZALEZ, JR. WILL NOT FLEE OR POSE A DANGER TO PUBLIC SAFETY.**

Gonzalez, Jr. violated Judge Schneider's "zero tolerance" requirement, a condition of his pretrial supervised release.  Additionally, the Court notes that, although there is not probable cause to believe that Gonzalez, Jr. committed a felony, there is probable cause to believe that Gonzalez, Jr. committed a crime by soliciting a prostitute.  While 18 U.S.C. § 3148(b)(2)(A)'s presumption does not apply because Gonzalez, Jr. was arrested for a petty misdemeanor, the Court is still required to find that, "based on the factors set forth in section 3142(g) of this title, there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community . . . ."  18 U.S.C. § 3148(b)(2)(A).

Section 3142(g) of Title 18 of the United States Code provides:

**(g)    Factors to be considered.** -- The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning --

    **(1)**    the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

    **(2)**    the weight of the evidence against the person;

    **(3)**    the history and characteristics of the person, including --

        (A)    the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

        (B)    whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

    **(4)**    the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3142(g).   In regards to the first factor, while the United States' case against the Varela DTO -- the drug trafficking conspiracy in which Gonzalez, Jr. is allegedly involved -- is robust and complex, the evidence against Gonzalez, Jr., to the extent that it supports his guilt, does not support that he was involved to as great of an extent as many others.   As to the evidence against Gonzalez, Jr., the United States represents that it has wire-tapped recordings between Gonzalez, Jr.

-25-

and Varela, the head of the Varela DTO, which indicate that Gonzalez, Jr. was involved in trafficking drugs for the Varela DTO.  The United States points to two conversations that link Gonzalez, Jr. to potential drug trafficking activity.  In light of the federal case involving 15 defendants, more than one of whom were arrested and found to possess drugs, the weight against Rodriguez does not appear substantial and weighs in favor of finding him fit for pretrial release.

Under the third factor, Rodriguez' history and his characteristics weigh in favor of finding that he should be released pretrial.  Until October 24, 2012, Gonzalez, Jr. complied with all conditions of release, and Pretrial Services recommended taking him off of electronic monitoring after six months of his compliance.  Further, Gonzalez, Jr. self-surrendered within twenty-four hours of being charged with the petty misdemeanor, as the condition of his pretrial release so required.   It is not clear that this factual scenario should disturb the conclusion that Gonzalez, Jr. is suited to release despite the nature and circumstances of the offense charged.   While subsection B of the third factor takes into account whether the defendant is alleged to have committed a crime while on release, parole, or otherwise under the supervision of a court, that factor goes to whether the crime for which the defendant is seeking pretrial release was alleged to have been committed. See 18 U.S.C. § 3142(g)(3)(B)("[W]hether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law . . . .")(emphasis added).   Here, Gonzalez, Jr. was not under court-administered supervision and, in fact, had no prior criminal record.  While it might be that his arrest for the petty misdemeanor should weigh in favor of finding that § 3142(g)(3)(B) cuts against his release, in light of the Court having already taken the crime into consideration in analyzing § 3148 as a prerequisite to this analysis under § 3148(b)(2),

the Court is not convinced, without guidance from the Tenth Circuit or other case law, such consideration is required by this section, although the consideration should be taken into account somewhere in the overall analysis.   Regardless whether it should be taken into account for this third factor, notably, pursuant to § 3142(g)(3)(A), the United States does not contend that Gonzalez, Jr. is a flight risk, or that they are concerned that he will not appear at trial.   See 18 U.S.C. § 3142(g)(3)(A) (noting that the history and characteristics of the person include taking into account the "record concerning appearance at court proceedings . . .").   In light of Gonzalez, Jr.'s history and his circumstances, including his current employment, his history of compliance with supervised pretrial release, and that the United States does not assert he poses any risk of flight, other than the grand jury's findings of probable cause as to the petty misdemeanor, there is no further evidence weighing in favor of detention.

        In regard to the fourth factor, these circumstances support a finding that there are conditions of release that will assure that Gonzalez, Jr. will not pose a danger to the community. The alleged commission of federal crime and the allegations of patronizing a prostitute evidence that Gonzalez, Jr. poses a danger to the community.   This new petty misdemeanor is, however, the only crime, other than the drug trafficking conspiracy for which he is before the Court, that Gonzalez, Jr. is alleged to have committed, and he has not been convicted of either crime. Notably, there is no evidence, and the United States does not contend that the nature and circumstances of the crime, or Gonzalez, Jr.'s history, show, that Gonzalez, Jr. poses any threat of violence.   Accordingly, the Court does not find that the fourth factor weighs in favor of Gonzalez, Jr.'s pretrial detention, because he does not present a substantial danger to a person or the community if released.   The § 3142(g) factors, in the aggregate, thus counsel against detaining

Gonzalez, Jr. pre-trial, and rather support a finding that there are conditions of release that will assure that Gonzalez, Jr. will not flee or pose a danger to the community, and that he will abide by such conditions.

> **D.    BECAUSE THE COURT FINDS THAT THERE ARE CONDITIONS OF RELEASE THAT WILL REDUCE TO AN ACCEPTABLE LEVEL GONZALEZ, JR.'S DANGER TO OTHERS AND THE COMMUNITY, THE COURT WILL AMEND HIS CONDITIONS OF RELEASE ACCORDINGLY.**

Section 3148(b) provides:

> If the judicial officer finds that there are conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community, and that the person will abide by such conditions, the judicial officer shall treat the person in accordance with the provisions of section 3142 of this title and may amend the conditions of release accordingly.

18 U.S.C. § 3148(b).   Although the Court finds that § 3142(g)'s factors weigh against finding that Gonzalez, Jr. should be detained pre-trial, that Gonzalez, Jr. was arrested for a crime while under the Court's supervision, and that the crime alleged is patronizing a prostitute, show that Gonzalez, Jr. poses a danger to others and the community, and counsel the Court to impose conditions to assure that Gonzalez, Jr. cannot continue to commit this crime or others while on release.   The Court considered placing Gonzalez, Jr. in a halfway house with lockdown conditions and no access to the internet.[5]   The Court recognizes, however, that Gonzalez, Jr. appears to have a family that cares for him and relies on him, and, importantly, that the United States does not contend that Gonzalez, Jr. is a flight risk.   The Court concludes that, under the circumstances,

---

[5] The Court also considered home detention and a curfew, but ultimately decided that a curfew was not enough.   The time of day does not appear to have been an important factor in his alleged state crime.   If he cannot leave his house, he is unlikely to bring a prostitute to the ranch.

imposing conditions of home incarceration[6] with electronic monitoring, but allowing Gonzalez, Jr. to continue to work training horses at his home in Albuquerque, will reasonably assure that Gonzalez, Jr. does not pose a danger to another or to the community, and is not punitive.   Because Gonzalez, Jr. works by training horses at his home, home incarceration will allow him to continue to work to support his family, but will preclude him from leaving his home other than to meet with his attorney or to receive emergency medical care.   Home incarceration with electronic monitoring will thus allow the Court adequate supervision while providing Gonzalez, Jr. the ability to work and support his family.   In light of Gonzalez, Jr. having allegedly solicited the prostitute through electronic communications via his telephone, the Court will also impose as a condition of release that Gonzalez, Jr. is not to have any access to electronic equipment that he might use to access the internet or send electronic communications, including, but not limited to: (i) a personal computer; (ii) cellular telephone with internet capabilities; (iii) tablet computer; or (iv) iPod or similar device with wi-fi or cellular internet accessibility.   His family residing there and visitors will be precluded from possessing such devices on the premises or bringing them to the premises.

## IV.     REQUIRING GONZALEZ, JR.'S DETENTION UNTIL TRIAL, UNDER THE CIRCUMSTANCES, WOULD IMPLICATE DUE PROCESS CONCERNS.

It is a violation of due process to punish a pretrial detainee before a lawful conviction.   See United States v. Salerno, 481 U.S. at 747 n.4 (recognizing that there is a "point at which detention in a particular case might become excessively prolonged, and therefore punitive in relation to

---

[6] Home incarceration restricts a defendant to his or her residence "at all times except for medical needs or treatment, religious services, and court appearances pre-approved by the pretrial services office or supervising officer."   Order Setting Conditions of Release, ¶ 8(s)(iii), at 2, AO 199A (Rev. 11/08).

Congress' regulatory goal."). The Tenth Circuit has held that detention of a criminal defendant pending trial violates due process when the detention is excessively prolonged and is not regulatory, but punitive. See, e.g., Peoples v. CCA Det. Centers, 422 F.3d at 1106 (10th Cir. 2005); United States v. Hudak, 77 F. App'x at 489 ("Detention of a criminal defendant pending trial does not violate a defendant's due process rights under the Fifth Amendment, so long as the confinement does not amount to punishment."); United States v. Cos, 198 F. App'x at 732 (stating that "due process may require a release from pretrial detention or, at a minimum, a fresh proceeding at which more is required of the government than is mandated by section 3142."). To determine whether a defendant's detention implicates due process, courts look to "1) the length of detention; 2) the extent of the prosecution's responsibility for the delay of trial; and 3) the strength of the evidence upon which the detention was based." United States v. Cos, 198 F. App'x at 732.

The Court, by imposing detention and requiring Gonzalez, Jr. to remain in custody, would likely implicate due process concerns. If the only reason that Judge Schneider revoked release is because he violated the "zero tolerance" condition, such a decision is close to punishment, and, under these circumstances, a thirteen-month detention would be punitive, and imposing detention pretrial as punishment is not consistent with due process. It is a violation of due process to punish a pretrial detainee before a lawful conviction. See Peoples v. CCA Det. Centers, 422 F.3d at 1106 ("If an act by a prison official, such as placing the detainee in segregation, is done with an intent to punish, the act constitutes unconstitutional pretrial punishment."). Detaining Gonzalez, Jr. for more than a year, which is far longer than a sentence on his petty misdemeanor would be, on the basis that pretrial conditions provide for "zero tolerance" is mostly, if not entirely punitive and not regulatory in nature. Pretrial detention for that length of time cannot rest soundly on a cursory

review of the factors set forth in 18 U.S.C. §§ 3142 and 3148.   Neither can pretrial detention for that length of time rest solely on a condition of release entitled "zero tolerance."   As the Tenth Circuit recognized in United States v. Cos, whether pretrial detention becomes constitutionally excessive is determined by a balancing of factors -- which do not include and do not amount to "zero tolerance."   Pretrial detention for thirteen months under the circumstances of the case does not have a sound basis in the text of the Bail Reform Act or in the Constitution.

Thus, if the Court were to revoke release and detain Gonzalez, Jr. solely because he committed a petty misdemeanor, the order would be largely punitive under the circumstances -- punishing him for violating a zero tolerance policy.   While soliciting a prostitute is a crime, it is not a crime that the State of New Mexico has, with its classification system, treated as one of its more serious crimes.   Gonzalez, Jr. is certainly not helping his federal case any by committing crimes while on release.   Ultimately, however, the Court's determination whether Gonzalez, Jr. should be detained pretrial or released subject to conditions of supervision is analyzed pursuant to Congress' goals enacted through law; the Court must make its usual predictions whether he will comply with the pretrial conditions, whether he poses a flight risk, and whether he poses a risk of danger to the community based upon the statute and the law.   Accordingly, the United States has not shown by a preponderance of the evidence that Gonzalez, Jr. is a flight risk, or by clear-and-convincing evidence that he presents an unreasonable risk of danger to the community given the conditions that the Court will impose.

In conclusion, pretrial detention is inappropriate and unnecessary in this case for the following reasons: (i) Gonzalez, Jr. is not unlikely to abide by any condition or combination of conditions of release; (ii) the 18 U.S.C. § 3142(g) factors weigh against detention; (iii) there are

conditions that will assure that Gonzalez, Jr. will not flee or pose a danger to the safety of any

person or of the community; and (iv) detention would be punitive.   Home incarceration,

electronic monitoring, and precluding Gonzalez, Jr. from accessing any equipment that will allow

him access to any internet service should eliminate the risk of any similar incident in the future,

and Pretrial Services has the flexibility to tailor Gonzalez, Jr.'s home incarceration as necessary.

**IT IS ORDERED** that the objections in Defendant Ramon Gonzalez, Jr.'s Objections to

Magistrate Judge's Detention Order and Motion for De Novo Review of Same, filed Nov. 20, 2012

(Doc. 276), are sustained, and his motion is granted.   The Court will enter an Order releasing him

with electronic monitoring, placing him under home incarceration in his Albuquerque home while

allowing him to continue working on such premises only, requiring him to surrender all equipment

that will allow him to have access to any internet service, and requiring no such equipment to be on

his premises.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Kenneth J. Gonzales
    United States Attorney
Reeve L. Swainston
Stephen R. Kotz
Cynthia L. Weisman
    Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

        *Attorneys for the Plaintiff*

Paul J. Kennedy
Arne R. Leonard
Paul Kennedy & Associates, PC
Albuquerque, New Mexico

*Attorneys for the Defendant*